UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEPHANIE McDADE,<br><br>*Plaintiff*,<br><br>v.<br><br>NATIONAL RAILROAD PASSENGER CORP., *doing business as* AMTRAK,<br><br>*Defendant*. | Civil Action No. 23-03801 (AHA) |

**Memorandum Opinion and Order**

Stephanie McDade alleges that the National Railroad Passenger Corporation, commonly known as Amtrak, violated the Americans with Disabilities Act ("ADA") by failing to reasonably accommodate her disability. Amtrak moves for summary judgment, arguing that McDade's ADA claim is precluded by the Railway Labor Act ("RLA") and that no reasonable jury could find an ADA violation. The Court concludes that McDade's claim does not fall within the narrow category of precluded disputes and that there are genuine disputes of material fact that make summary judgment inappropriate. The Court accordingly denies Amtrak's motion for summary judgment.

**I.     Background**

McDade works as a crew management representative at Amtrak. ECF No. 18-1 ¶ 70. She is responsible for ensuring trains are adequately staffed within a specific territory and generally performs her tasks by phone or computer. *Id.* ¶ 71; *see* ECF No. 16-3 at 58–60. McDade has chronic inflammatory response syndrome, which means certain environmental toxins cause her to experience brain fog, muscle aches, and joint pain. ECF No. 18-1 ¶¶ 73–75. According to her

doctor, McDade will become ill if exposed to environmental antigens such as perfume and fragrances, so she needs a fragrance-free workplace. ECF No. 17-7 at 2.

During the COVID-19 pandemic, McDade's union and Amtrak agreed that union members would work remotely for the duration of the national state of emergency. ECF No. 17-1 ¶ 19. In October 2021, McDade took medical leave due to her genetic condition, and when she returned to work in January 2022, Amtrak approved remote work because McDade's condition prevented her from getting vaccinated. *Id.* ¶¶ 21, 23. A few months later, McDade requested full-time remote work on an ongoing basis to accommodate her condition. *Id.* ¶¶ 24, 27, 32. Amtrak approved the request following a review by its ADA panel. *Id.* ¶ 32.

In June 2022, the union asked Amtrak to return certain employees to in-person work. *Id.* ¶ 33. Amtrak and the union then had negotiations about new hybrid/remote work schedules. *Id.* ¶ 34. In April 2023, an Amtrak official announced that employees in McDade's department would resume in-person work in around a month. *Id.* ¶ 35. McDade sought to continue her remote work accommodation, and Amtrak granted a three-month extension. *Id.* ¶¶ 36–37.

In June 2023, McDade provided Amtrak an updated note from her doctor reiterating that she needed to work remotely. *Id.* ¶ 41. Amtrak notified McDade that remote work for her position was no longer available under its collective bargaining agreement ("CBA") with the union. *Id.* ¶ 43. McDade provided another note from her doctor stating that if remote work was not possible, she would require several in-person work accommodations, including a private office. *Id.* ¶ 44. The ADA panel determined that Amtrak could not provide those accommodations, and Amtrak asked McDade if other measures, such as plexiglass around her desk, would be effective. *Id.* ¶¶ 49–50. McDade responded that the only effective accommodation for her condition was remote work, and Amtrak again said her position did not qualify for remote work under the CBA. *Id.* ¶¶ 50, 58;

*see* ECF No. 16-28 at 2. McDade then took several months of approved medical leave. ECF No. 17-1 ¶¶ 62–64. When her leave ended, McDade returned to in-person work without any accommodations. *Id.* ¶¶ 65–66; *see* ECF No. 16-3 at 33–34. McDade suffers the symptoms of her condition, including brain fog, muscle aches, and joint pain, when working in the office. ECF No. 17-1 ¶ 67; *see* ECF No. 16-3 at 32–33.

McDade filed this action claiming Amtrak violated the ADA by refusing to accommodate her and failing to engage in the interactive process. ECF No. 1 ¶¶ 22–34. Amtrak answered the complaint, and the parties proceeded to discovery. Amtrak now moves for summary judgment. ECF No. 16.

## II.  Discussion

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute "is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). The reviewing court "must view the evidence in the light most favorable to the nonmoving party . . . , draw all reasonable inferences in her favor, and eschew making credibility determinations or weighing the evidence." *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007).

Amtrak argues McDade's ADA claim is precluded by the RLA and no reasonable jury could find in her favor. The Court concludes that neither argument is persuasive and that McDade is entitled to present her ADA claim to a jury.

3

**A. The RLA Does Not Preclude McDade's ADA Claim**

Congress enacted the RLA "to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994). The Act establishes a mandatory arbitral process for two types of disputes: "major" disputes, which relate to "the formation of collective [bargaining] agreements or efforts to secure them," and "minor" disputes, which "gro[w] out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." *Id.* at 252–53 (alterations in original) (citations omitted). That is, whereas "major disputes seek to create contractual rights, minor disputes [seek] to enforce them" through "the interpretation or application of existing labor agreements." *Id.* at 253, 256 (citation omitted); *see also Consol. Rail Corp. v. Ry. Lab. Execs.' Ass'n*, 491 U.S. 299, 305 (1989) ("The distinguishing feature of [a minor dispute] is that the dispute may be conclusively resolved by interpreting the existing agreement."). Amtrak argues that McDade's ADA claim is a minor dispute that must go through the RLA's grievance resolution process. The Court disagrees.

As the Supreme Court has recognized, "the RLA's mechanism for resolving minor disputes does not pre-empt causes of action to enforce rights that are independent of the CBA." *Hawaiian Airlines*, 512 U.S. at 256.[1] The "general rule" is that "the RLA does not require arbitration of

---

[1] In *Hawaiian Airlines*, the Supreme Court considered RLA preemption of a state law cause of action; however, courts have recognized that its analysis applies equally to preclusion of a federal law cause of action because "questions of preemption and preclusion involve the same inquiry: whether the claim is based on a minor dispute." *Sturge v. Nw. Airlines, Inc.*, 658 F.3d 832, 836 n.4 (8th Cir. 2011); *see also, e.g.*, *Odell v. Kalitta Air, LLC*, 107 F.4th 523, 529 n.6 (6th Cir. 2024) ("In *Hawaiian Airlines*, the Supreme Court applied a case dealing with preclusion to a preemption issue, stating that the distinction did not 'rob' the preclusion case 'of its force in this context,' reasoning that the '[p]rinciples of federalism demand no less caution in finding that a federal statute pre-empts state law.'" (alteration in original) (quoting *Hawaiian Airlines*, 512 U.S. at 259 n.6)).

claims asserting rights established by state or federal law independent of a collective bargaining agreement." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 833 (7th Cir. 2014). Here, McDade's asserted rights stem from the ADA, not from a right she is entitled to under the CBA. Such claims are generally not precluded by the RLA. *See, e.g.*, *Stouffer v. Union R.R. Co.*, 85 F.4th 139, 145 (3d Cir. 2023) (no RLA preclusion where plaintiff's claims "stem from a federal statute, not the CBA itself"); *Giles v. Nat'l R.R. Passenger Corp.*, 59 F.4th 696, 703 (4th Cir. 2023) (no RLA preclusion where plaintiff "asserts a right under an independent federal statute, not the CBA, and we need not interpret the CBA to resolve this case").

Other courts in this District have reached the same conclusion in cases against Amtrak involving the assertion of rights under federal antidiscrimination statutes. *See Klotzbach-Piper v. Nat'l R.R. Passenger Corp.*, No. 18-cv-1702, 2021 WL 4033071, at *6 (D.D.C. Sept. 3, 2021) (finding that plaintiff's claims were not precluded by RLA where suit was based on "federal antidiscrimination laws that confer on her rights 'independent of' any collective bargaining agreement" (citation omitted)); *Hamilton v. Nat'l R.R. Passenger Corp.*, No. 19-cv-01986, 2020 WL 6781234, at *4 (D.D.C. Nov. 18, 2020) ("The [Family and Medical Leave Act] claims that [the plaintiff] asserts here arise independent of the CBA."); *Said v. Nat'l R.R. Passenger Corp.*, 390 F. Supp. 3d 46, 55 (D.D.C. 2019) (holding that plaintiff's claims sought to enforce "the right not to be discriminated against by an employer as prescribed by federal and state laws" and therefore were "not preempted or precluded by virtue of the nature of the right asserted"). Amtrak makes little effort to distinguish these cases.

Amtrak argues that McDade's claim must go through the RLA's arbitral process for minor disputes because, according to Amtrak, it implicates the question whether allowing remote work as an accommodation would violate the CBA. ECF No. 16-1 at 8–10. Because Amtrak has raised

5

this potential defense, it argues, McDade's claim is now "inextricably intertwined" with the CBA and becomes a minor dispute. *Id.* This is not persuasive. The Supreme Court has rejected the notion that the RLA precludes a claim whenever a defendant simply argues its actions were "arguably justified" by the terms of a CBA. *Hawaiian Airlines*, 512 U.S. at 265–66. Amtrak cannot trigger preclusion "merely by asserting certain CBA-based defenses to what is essentially a non-CBA-based claim . . . or by arguing that the action challenged by the plaintiff is 'arguably justified' by the terms of a CBA." *Hoffstead v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 132 F.4th 503, 514 (7th Cir. 2025) (quoting *Brown v. Ill. Cent. R.R. Co.*, 254 F.3d 654, 668 (7th Cir. 2001)). Courts have accordingly concluded it "is not enough to point to sections of the CBA that may be relevant." *Stouffer*, 85 F.4th at 146; *accord, e.g.*, *Carlson*, 758 F.3d at 833 ("Claims are not precluded just 'because certain provisions of the CBA must be examined and weighed as a relevant but non-dispositive factor in deciding a claim or a defense.'" (quoting *Brown*, 254 F.3d at 668)). That is precisely what Amtrak tries to do here. Its suggestion that the CBA might have prevented it from accommodating McDade "boils down to asserting that its actions were permitted by the CBA," which is not sufficient to trigger RLA preclusion. *Stouffer*, 85 F.4th at 146.

Here, Amtrak attempts to invoke the CBA as a justification without even identifying any provision of the CBA that precludes remote work. Given that Amtrak does not identify a provision of the CBA precluding remote work, let alone a provision that precludes remote work as an accommodation under federal disability law, McDade's claim does not require the Court to resolve any disputed interpretation of the CBA. *See Hamilton*, 2020 WL 6781234, at *4 (explaining that plaintiff's claims "do not hinge on competing interpretations of a CBA provision"); *cf. Odell v. Kalitta Air, LLC*, 107 F.4th 523, 532 (6th Cir. 2024) (holding that failure-to-accommodate claims were precluded because they could not be resolved without interpreting the CBA). McDade's

argument is that she was entitled to a reasonable accommodation under rights conferred by the ADA; she does not rely on rights conferred by the CBA. *See Carlson*, 758 F.3d at 833 (explaining that "RLA preclusion, properly applied, does nothing more than keep disputes actually arising under a collective bargaining agreement out of court"). Indeed, McDade claims she had a right to a reasonable accommodation notwithstanding anything to the contrary in the CBA. *See Brown*, 254 F.3d at 668 (explaining that plaintiff's claim would not have been precluded if "the parties did not dispute the interpretation of the relevant CBA provisions (and [the plaintiff] had merely argued that he was entitled to a certain reasonable accommodation under the ADA notwithstanding anything to the contrary in the CBA)" (emphasis omitted)). Because that is the case, McDade's claim is not precluded by the RLA.[2]

### B. A Jury Must Resolve The Genuine Disputes Of Material Fact As To Whether Amtrak Failed To Accommodate McDade

To prevail on her failure-to-accommodate claim, McDade must show that (1) she was a qualified individual with a disability; (2) Amtrak had notice of her disability; and (3) Amtrak denied her request for a reasonable accommodation. *Ward v. McDonald*, 762 F.3d 24, 31 (D.C. Cir. 2014). The requested accommodation "must be related to the limitation that rendered the person disabled." *Hill v. Assocs. for Renewal in Educ., Inc.*, 897 F.3d 232, 237 (D.C. Cir. 2018) (citation omitted). If McDade shows that the accommodation "seems reasonable on its face, *i.e.*, ordinarily or in the run of cases," then Amtrak "must show special (typically case-specific)

---

[2] Amtrak also suggests that accommodating McDade could have been unlawful "direct dealing" with a union member. ECF No. 16-1 at 10–11. But this is just another way of arguing that Amtrak's decision not to accommodate McDade was "arguably justified" by the CBA, and that is insufficient to trigger RLA preclusion of a claim based on federal antidiscrimination law. *See, e.g.*, *Stouffer*, 85 F.4th at 146 ("[A] claim is not barred simply because 'the action challenged by the plaintiff is "arguably justified" by the terms of the CBA.'" (citation omitted)); *Carlson*, 758 F.3d at 832 (explaining that courts must "tak[e] care not to interpret the RLA as excluding a class of employees from statutory protections against employment discrimination and retaliation").

circumstances that demonstrate undue hardship in the particular circumstances." *Id.* at 237–38 (quoting *US Airways, Inc. v. Barnett*, 535 U.S. 391, 401–02 (2002)).

Amtrak does not dispute the first two elements. ECF No. 16-1 at 13. Amtrak does not dispute McDade is a qualified individual with a disability under the ADA because she has a genetic condition that can be triggered by environmental toxins and that causes her to experience brain fog, muscle aches, and joint pain. ECF No. 18-1 ¶¶ 73–75. And Amtrak does not dispute it was on notice of McDade's disability, which is clear from her accommodation request and supporting medical documentation, as well as the review by Amtrak's ADA panel. *See, e.g.*, ECF No. 17-1 ¶¶ 24–27.

Amtrak focuses on only the third element, arguing that it did not deny McDade a reasonable accommodation by refusing remote work. ECF No. 16-1 at 13. But a jury could easily conclude that McDade's request to work remotely to accommodate her condition was reasonable on its face. The record shows McDade had already worked remotely for an extended period, and Amtrak does not suggest she was unable to perform her duties with that accommodation. *See* ECF No. 17-1 ¶¶ 23, 32, 37; *see also Norden v. Samper*, 503 F. Supp. 2d 130, 145 (D.D.C. 2007) (explaining that "accommodations are reasonable if they allow the employee to perform the essential functions of the job without imposing undue hardship on the employer"). For similar reasons, a jury could conclude that any undue hardship defense would fail based on the typical factors: "(1) the nature and cost of the accommodation; (2) the effect on expenses and resources; (3) the overall size of the business . . . ; and (4) the type of operation." *Ward v. District of Columbia*, 211 F. Supp. 3d 58, 66 (D.D.C. 2016) (internal quotation marks omitted) (quoting 42 U.S.C. § 12111(10)(B)). McDade had done her job remotely in the past, and Amtrak does not point to any evidence to infer,

let alone eliminate any dispute of fact as to whether, continuing the accommodation would have posed an undue hardship on these grounds.

Amtrak argues that it is entitled to judgment on McDade's ADA claim now for two reasons. First, it says remote work was an unreasonable accommodation because the union had filed a grievance when Amtrak permitted some employees, including those in McDade's position, to work remotely. ECF No. 16-1 at 14. Amtrak contends that it would not have been reasonable to create a remote work position for McDade outside the process for negotiating such positions under the CBA. *Id.* But a jury could conclude otherwise. As described above, Amtrak has not pointed to any CBA provision that prevented remote work, let alone allowing it as an accommodation. McDade has introduced facts showing that Amtrak's current understanding is inconsistent with its prior conduct, as Amtrak allowed McDade to work remotely as an accommodation for an extended period, including well after the union had raised its concerns about remote work under the CBA. ECF No. 17-1 ¶¶ 33, 37. And the particular fact Amtrak relies on—the union's position regarding remote work as an accommodation—is in genuine dispute. McDade points to evidence that the union did not have any opposition to remote work as an accommodation. *See* ECF No. 17-11 at 2 (stating that "based on the rules cited in [McDade's] denial letter, . . . we did not see a violation of the CBA"); ECF No. 17-12 at 2 (stating that "[t]he Organization would never stand in the way of an approved ADA accommodation between a member and the company"). A reasonable jury therefore could discredit Amtrak's explanation and find that continuing its remote work accommodation was not an undue hardship.[3]

---

[3]   McDade contends that an accommodation poses an undue hardship only if it would impair the seniority rights of other employees, while Amtrak maintains that courts have found accommodations unreasonable even where seniority provisions were not implicated. ECF No. 17 at 14; ECF No. 18 at 10–11. Regardless, a jury could conclude that McDade's proposed

9

Second, Amtrak argues McDade failed to consider other reasonable accommodations—including installation of plexiglass or a job transfer—and insisted that remote work was the only solution. ECF No. 16-1 at 14–16; ECF No. 18 at 15–17. To be sure, "[a]n employer is not required to provide an employee that accommodation he requests or prefers, the employer need only provide some reasonable accommodation." *Congress v. Gruenberg*, 643 F. Supp. 3d 203, 221 (D.D.C. 2022) (quoting *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1305 (D.C. Cir. 1998) (en banc)). But that simply raises the question whether the other proposed accommodations are reasonable. And "[d]eciding the reasonableness of a given accommodation not uncommonly involves context-based decisions ill-suited for summary judgment." *Ali v. Regan*, 111 F.4th 1264, 1277 (D.C. Cir. 2024). While there are some cases in which "the undisputed evidence establishes that a proffered accommodation is so plainly effective as to permit summary judgment," this "fact-specific question" often "must be resolved by a factfinder." *Id.* at 1278 (internal quotation marks and citation omitted). That is the case here. As to plexiglass as an alternative accommodation, McDade's doctor testified this could have been an alternative if it went "all the way to the ceiling," essentially "creating a room" for McDade. ECF No. 16-8 at 60–61. But McDade points to evidence indicating that Amtrak did not actually propose such an accommodation; a human resources official asked only whether plexiglass around her desk would be effective. ECF No. 16-28 at 2. As to the possibility of a job transfer as an accommodation, McDade points to evidence that a transfer would not have come with the same seniority and benefits she enjoyed. ECF No. 17-4 at 53 (McDade testifying that while reassignment was mentioned, "it was not said to me, you will be able to work from home, you will be able to retain your seniority, you will be able to retain your

---

accommodation was reasonable and did not present an undue hardship for the reasons already discussed.

same pay"). And it is insufficient for Amtrak to argue that McDade should have found a new job, if she could have continued in her position with an accommodation. *See Wirtes v. City of Newport News*, 996 F.3d 234, 242–43 (4th Cir. 2021) (explaining that "reassignment is strongly disfavored when an employee can still do their current job with the assistance of a reasonable accommodation, and that reassignment should therefore be held in reserve for unusual circumstances" (internal quotation marks and citation omitted)); *see also Aka*, 156 F.3d at 1301 ("Congress saw reassignment, as the [Equal Employment Opportunity Commission] does, as an option to be considered only after other efforts at accommodation have failed.").

### III. Conclusion

For these reasons, Amtrak's motion for summary judgment, ECF No. 16, is denied.

_____
AMIR H. ALI
United States District Judge

Date:   September 22, 2025

11